UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUAN M. HODGE,

       Plaintiff,

v.

CONSOLIDATED RAIL CORP.
(NORFOLK SOUTHERN) and
UNITED TRANSPORTATION
UNION LOCAL 278,

       Defendants.
       _____/

File No.  5:03-CV-92

HON. ROBERT HOLMES BELL

**O P I N I O N**

Plaintiff Juan M. Hodge filed this action against his former employer, Consolidated Rail Corporation ("Conrail"), and his union, United Transportation Union Local 278 ("the Union"), alleging breach of a collective bargaining agreement, breach of the duty of fair representation, race discrimination, and retaliation.  Plaintiff's claims against Conrail were dismissed with prejudice on stipulation of the parties. (Docket # 64).  This action is presently before the Court on the Union's motion for summary judgment.

**I.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to

1

judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If defendants carry their burden of showing there is an absence of evidence to support a claim then plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

"On summary judgment, all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the parties opposing the motion." *Hanover Ins. Co. v. American Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (citing *Matsushita*, 475 U.S. at 586-88). Nevertheless, the mere existence of a scintilla of evidence in support of plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## II.

In his amended complaint Plaintiff withdrew all of his original claims against Defendant Union except his race discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

The following facts are not in dispute. Plaintiff was hired by Conrail in May 1997. At the conclusion of his probationary period Plaintiff became a member of the Union. In 1998 Plaintiff was accepted into Conrail's locomotive and engineering school and worked as a student engineer.

The Union conducts its representative function and monitors its collective bargaining agreement with the carrier through General Committees of Adjustment, made up of a Local Chairperson ("LC") from each local and headed by a General Chairperson who is the final authority with regard to the progression of claims and grievances. Plaintiff's Local Chairperson was Scott C. Cole.

On December 6, 1998, a felony complaint was issued against Plaintiff in Eaton County charging him with conspiracy to commit first degree murder. On December 28, 1998, a felony information was issued charging Plaintiff with an additional count of larceny over $100.00. Plaintiff pleaded guilty to larceny on January 21, 1999, and the murder conspiracy charge was dismissed. Plaintiff was sentencing on March 18, 1999, to 90 days in jail. The court advised that it would consider work release on verification of employment.

By letter dated February 10, 1999, Conrail dismissed Plaintiff immediately for failure to comply with Rule D of the NORAC Operating Rules, in that he was involved in a murder for hire plot which resulted in his pleading guilty to larceny. Plaintiff, through LC Cole, appealed the dismissal and was represented by LC Cole at an evidentiary hearing. By letter dated March 31, 1999, Conrail conditionally reinstated Plaintiff as follows:

3

>Solely on a last chance leniency basis, you will be restored to service with the time held out of service to apply as suspension subject to the following conditions:
>
>1. You must mark up and perform service within ten(10) days from the date of this letter.
>
>2. Prior to marking up and within seven(7) days from the date of this letter you must contact District Superintendent C. Grey at: (313) 323-5834. To ensure that he fully understands what will be expected of him by the carrier.
>
>3. This restoration to service under the stated conditions is in full, final, and complete settlement of any and all claims which you or the United Transportation Union has, or may have, arising from the dismissal and that you and the United Transportation Union agree that no claims shall be presented or progressed for the time lost for the period from the date removed from service until the date returned to duty.

Plaintiff's criminal defense attorney, G. Michael Hocking, made numerous attempts to contact Conrail to confirm Plaintiff's employment status and his hours of employment, but received no response.

In April 1999 Plaintiff requested Ruth Cornett, his probation agent, to contact Charlie Grey or Dan Honeycutt at Conrail to assist him in getting work release. Ms. Cornett spoke with Mr. Honeycutt at Conrail on several occasions in April 1999. Mr. Honeycutt was unable to give her a new schedule for Plaintiff, although he said he was attempting to get it worked out.

On April 16, 1999, Conrail sent Plaintiff a letter withdrawing the conditional reinstatement because it had not received a response to its conditional offer of reinstatement.

Conrail directed Plaintiff to immediately return to work: "Failure to immediately mark-up and perform service will result in you being absent without permission."

By letter dated May 19, 1999, Conrail terminated Plaintiff because he had not performed service or been available to perform service since April 17, 1999:

> Inasmuch as you have not obtained a written authorized leave of absence pursuant to UTU Rule 98(a)[1] and UTU-E Article GM 15 or furnished sufficient reason for your inability to perform service, your seniority is hereby terminated effective as of the date of this letter and your name will be removed from the seniority roster pursuant to Rule 98(j)[2] and of your Collective Bargaining Agreement, UTU-C&T and UTU-E.

When Plaintiff completed his jail term on May 20, 1999, he was not permitted to return to work at Conrail.

Effective June 1, 1999, Conrail was purchased by Norfolk Southern and CSX Transportation and divided up between the two purchasing railroads. On July 8, 1999, LC Cole appealed Plaintiff's dismissal to Arthur Cantrell, Conrail's Manager of Labor Relations:

> In a letter dated 3-31-99 signed by yourself, and addressed to J.M. Hodge, you directed Mr. Hodge to contact Mr. C. Grey and to return to service. Mr. Hodge has tried to no avail to reach Mr. Grey. Mr. Hodge subsequently ask

---

[1]Rule 98(a) provides:

Trainmen shall be allowed up to 30 days off duty upon receipt of permission from the proper official of the Corporation. Trainmen must request written leave of absence when they are to be off duty for more than 30 consecutive days.

[2]Rule 98(j) provides:

A trainman who absents himself without a written authorized leave of absence as provided in this rule shall have his seniority terminated.

5

>his attorney, an officer of the friend of the court and a judge to call. All tried but were not able to speak to Mr. Grey or have their calls returned. . . . Mr. Hodge was terminated . . . .
>
>In light of the carriers actions in this matter I respectfully request that Mr. Hodge be returned to duty immediately. Also as with this letter I would like to assert Mr. Hodges right to appeal Mr. Griffins [May 19, 1999] decision . . . .

Sometime thereafter Mr. Cantrell was released from service. On several occasions in May 2000 LC Cole contacted Ms. Tabetha Bolton, Norfolk Southern's Assistant Director of Labor Relations, asking for a response to his appeal. He did not receive an answer. On June 8, 2000, he sent a certified letter to Ms. Bolton, but still did not receive an answer. In July 2000, Plaintiff contacted General Chairperson Delbert G. Strunk. GC Strunk contacted LC Cole regarding the status of the case. On November 29, 2000, LC Cole forward his file to GC Strunk. GC Strunk contacted Norfolk Southern's Labor Relations Department to attempt to resolve the matter. Norfolk Southern was adamant in its position that Plaintiff was properly dismissed and that the dismissal was never timely appealed. GC Strunk could not find any basis for pursuing the appeal.

## III.

Defendant Union contends that it is entitled to summary judgment on three independent grounds. First, the Union contends that Plaintiff did not sue the correct entity. Plaintiff's complaint alleges inadequate Union representation. According to the Union, the proper party was the General Committee of Adjustment rather than Local 278. Even if the Union is correct on this contention, the Court declines to enter summary judgment on this

basis as the Court would readily grant leave to amend the complaint to identify the correct party defendant. FED. R. CIV. P. 15(a) (stating that leave to amend "shall be freely given when justice so requires.").

Defendant Union's second contention is that Plaintiff's claim is barred by the statute of limitations. The timely filing of a complaint with the EEOC is a procedural prerequisite to the enforcement of a Title VII action in federal court. 42 U.S.C. § 2000e-5(e). *See also Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 620 (6th Cir. 1983). Michigan is a "deferral state" because it has a state agency with "authority to administer state civil rights laws that prohibit unlawful employment practices." *Lewis v. Harper Hosp.*, 241 F. Supp.2d 769, 771 n.1 (E.D. Mich. 2002) (quoting *Smith v. Chrysler Financial Corp.*, 101 F. Supp.2d 534, 543 (E.D. Mich. 2000)). In deferral states claimants have 300 days to file with the EEOC. *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194 (6th Cir. 1995); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578-79 (6th Cir. 1992); *Lewis*, 241 F. Supp.2d at 771. The limitation period begins to run "[o]nce the employee is aware or reasonably should be aware" of the allegedly unlawful employment decision. *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001) (quoting *Equal Employment Opportunity Comm'n v. United Parcel Serv.*, 249 F.3d 557, 561-62 (6th Cir. 2001)).

Plaintiff had approximately four telephone conversations with the NAACP in 2000 because he believed he was being discriminated against on the basis of his race. He felt that "too long a period of time had went past so that I really felt that the Union and the employer

were playing a game with me and basically just trying to wear me down, which is what I still think. . . ." (Hodge dep. at 147 & 185). On July 31, 2002, Plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights and the EEOC claiming that he was "being subjected to delayed service and unequal terms and conditions of union representation" because of his race, "most recently on January 23, 2002."

The Union contends that the 300-day time limitation for Plaintiff's Title VII claim began in 2000 when he contacted the NAACP because at that time he was already aware of the allegedly unlawful delay in representation that is the basis of his Title VII claim. If the 300-day time period began in 2000, then it had run before Plaintiff filed his EEOC charge regarding delayed representation in July 2002.

Plaintiff contends that in 2000 he had suspicions that the Union was dilatory in its representation of him, but that he did not know until he filed his EEOC charge that the Union had closed his file and had abandoned his case.

Because delayed representation rather than abandonment of his claim was the basis of Plaintiff's EEOC claim, this Court concludes that Plaintiff's claim is barred by the limitations period. Defendant Union is accordingly entitled to summary judgment on Plaintiff's Title VII claim.

In light of this determination it is unnecessary to consider Defendant's remaining argument in support of summary judgment. Nevertheless, in an exercise of caution, this

Court will address Defendant Union's third argument that it is also entitled to summary judgment on the merits of Plaintiff's race discrimination claim.

Under Title VII it is an unlawful employment practice for a labor organization to discriminate against any individual because of his race. 42 U.S.C. § 2000e-2(c)(1). Because Plaintiff has not come forward with any direct evidence of race discrimination, his race discrimination claim must be evaluated under the burden shifting framework first set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).

> Under the *McDonnell Douglas* framework, the plaintiff faces the initial burden of presenting a prima facie case of unlawful discrimination. The establishment of a prima facie case creates a rebuttable presumption of discrimination and requires the defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. If the defendant is able to satisfy this burden, the plaintiff must then "prove that the proffered reason was actually a pretext to hide unlawful discrimination."

*Id.* (citations omitted).

To establish a prima facie claim of race discrimination against the Union, Plaintiff must show that he was a member of a protected class, that he was subject to some adverse action, and that he was treated differently from a similarly situated employee who was not a member of his protected class.

There is no dispute that Plaintiff is a member of a protected class. It is less clear whether Plaintiff has shown that he was subject to any adverse action. Plaintiff has not shown that the Union failed to assist him in challenging his dismissal. The Union

9

successfully challenged Plaintiff's first dismissal. The Railroad agreed "solely on a last chance leniency basis," to restore him to service on the condition that Plaintiff mark up and perform service within 10 days. Plaintiff was in jail and was unable to mark up within the agreed on time period. Plaintiff was dismissed a second time. Again, the Union appealed the dismissal, arguing that Plaintiff had not been able to contact the Railroad to make arrangements for work release. Plaintiff does not deny that the Union effectively represented him up to this point in time. Instead, he contends that the Union treated him adversely by allowing his appeal to languish. Plaintiff has not shown that this was the result of lack of diligence by the Union as opposed to the Railroad.

Nevertheless, even if we assume that Plaintiff showed that he was subject to some adverse action, Plaintiff still fails the third prong of the prima facie case because he has not shown that the Union treated him differently than any other similarly situated employees. In order to make out his prima facie claim, a plaintiff must "demonstrate that he or she is similarly situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original). Plaintiff has not attempted to show that he was treated differently than any employee, much less any employee who was similarly situated. Because he has not shown that he was treated differently from any similarly situated employees, he has failed to make out a prima facie case and is not entitled to the rebuttable presumption of discrimination, and his opposition

to Defendant's motion for summary judgment fails. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992).

Finally, even if this Court were to assume that Plaintiff had established a prima facie case of race discrimination, Defendant has rebutted the presumption of discrimination by introducing evidence of a legitimate, nondiscriminatory reason for the delay and the ultimate adverse resolution of Plaintiff's appeal. The Union has presented evidence that its efforts to seek resolution of Plaintiff's appeal were frustrated by the change in personnel associated with Norfolk Southern's purchase of Conrail. The Union has also presented evidence that it could not successfully challenge the Railroad's contention that Plaintiff was subject to dismissal for violating Rule 98 by failing to obtain a leave of absence when he was off work for an extended period.

A plaintiff can refute the legitimate, nondiscriminatory reason offered to justify an adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Whatever showing the plaintiff makes, the plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Johnson*, 319 F.3d at 866 (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)).

Plaintiff has not produced any evidence from which a jury could reasonably reject the Union's explanation for the unsuccessful appeal. Plaintiff does not dispute LC Cole's statement that he tried to represent Plaintiff to the best of his ability, but that he could not stop the company's revocation of the conditional reinstatement offer because Plaintiff had not signed it, and the best he could do was to note his objection to the terms in order to keep the matter alive. (Cole Decl. ¶¶ 4, 15). In fact, Plaintiff acknowledges that he spoke often with Cole, that Cole answered his questions, and worked with him on his appeals. (Hodge dep. at 24, 27-28, 69-71, 103, 106-07, 130). Plaintiff has not presented any evidence to refute LC Cole's and GC Strunk's description of the confusion and delay in labor relations that occurred as a result the purchase and division of Conrail by Norfolk Southern and CSX. (Cole Decl. ¶ 18; Strunk Decl. ¶ 6). Plaintiff has not presented any evidence to refute GC Strunk's statement that he contacted Norfolk Southern in hopes of favorably resolving the matter, but that Norfolk Southern had no interest in returning Plaintiff to work. (Strunk Decl. ¶ 11). Plaintiff has also failed to challenge GC Strunk's conclusion that by the time Plaintiff's file was brought to his attention the clear language of the Collective Bargaining Agreement eliminated any viable defense to Plaintiff's termination. (Strunk Decl. ¶ 12).

Neither has Plaintiff presented any evidence from which a jury could infer that the Union intentionally discriminated against him on the basis of his race. There is no evidence in the record of race discrimination by either LC Cole or GC Strunk individually. The evidence is unrefuted that both of them have successfully obtained reinstatement for other

African American Union members in the past. (Cole Decl. ¶ 27; Strunk Decl. 15). The only racial evidence Plaintiff can point to is his own deposition testimony that there were negative comments in the workplace about the fact that he dated Caucasian women. (Hodge dep. at 175-77, 189). Plaintiff has not presented evidence that Cole or Strunk shared those sentiments or that they were even aware of the comments being made.

There simply is no evidence on this record from which a jury could reasonably conclude that the Union discriminated against Plaintiff on the basis of his race. The Court concludes that in addition to the limitations bar, Plaintiff's race claim fails on the merits as well. The Union's motion for summary judgment will accordingly be granted.

An order and judgment consistent with this opinion will be entered.

Date:     June 13, 2005              /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE